## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHERRI PAPSUN, Administratrix of the Estate of DARRELL G. PAPSUN, 3350 Airport Road Trailer 70, Allentown, PA 18109, <br><br> *Plaintiff*, <br><br> v. <br><br> B. BRAUN MEDICAL, INC., 824 12th Avenue, Bethlehem, PA 18018; B. BRAUN OF AMERICA, INC., 824 12th Avenue, Bethlehem, PA 18018; B. BRAUN CeGaT, LLC, 824 12th Avenue, Bethlehem, PA 18018; B. BRAUN INTERVENTIONAL SYSTEMS, INC., 824 12th Avenue, Bethlehem, PA 18018; PHILIPS RS NORTH AMERICA, LLC, 6501 Living Place, Pittsburgh, PA 15206; PHILIPS NORTH AMERICA, LLC, 222 Jacobs Street, Floor 3, Cambridge, MA 02141; PHILIPS HOLDING USA, INC., 222 Jacobs Street, Floor 3, Cambridge, MA 02141; and JOHN DOE, a fictitious designation pursuant to Pa. R. Civ. P. 2005 for any company, entity, corporation, LLC, fictitious name, or person whose name, identity and/or action(s) are presently unknown to Plaintiff but whose wrongful, reckless, and/or negligent misconduct, related to emissions of ethylene oxide from the B. Braun plant located at 901 Marcon Boulevard, Allentown, Pennsylvania 18109, caused harm, injuries, and/or damages to the Plaintiff in this action, <br><br> *Defendants*. | Case No. 5:23-cv-02359 |

## NOTICE OF REMOVAL

Defendant Philips RS North America LLC ("Philips RS") hereby provides notice pursuant

to 28 U.S.C. §§ 1332, 1441, and 1446 of the removal of the above-captioned case from the Court

of Common Pleas of Lehigh County, Pennsylvania, Civil Division, in which it is now pending at Case No. 2023-C-1505 (the "Underlying Action"), to the United States District Court for the Eastern District of Pennsylvania, and states as follows:

## I. INTRODUCTION

1.      On May 30, 2023, Plaintiff Sherri Papsun, administratrix of the estate of her late husband, Darrell G. Papsun ("Decedent"), filed a complaint in the Court of Common Pleas of Lehigh County, Pennsylvania, Civil Division, bearing Case No. 2023-C-1505 (the "Complaint"), attached hereto as **Exhibit A**.  The Complaint names as defendants (i) Philips RS, Philips North America LLC ("Philips NA"), and Philips Holding USA, Inc. ("Philips USA," and collectively, the "Philips Defendants"), (ii) B. Braun Medical, Inc., B. Braun of America, Inc., B. Braun CeGaT, LLC, and B. Braun Interventional Systems, Inc. (together, the "Braun Defendants"), and (iii) John Doe, a fictitious designation made pursuant to Pennsylvania Rule of Civil Procedure 2005.

2.      Pursuant to 28 U.S.C. § 1446(a), the Complaint is the only process, pleading, or order that has been served to date upon the Philips Defendants in the Underlying Action.  A copy of the Docket Sheet in the Underlying Action is attached hereto as **Exhibit B**.

3.      By filing this Notice of Removal, the Philips RS does not waive its right to object to service of process, the sufficiency of process, jurisdiction over the parties, or venue, and expressly reserve its right to assert any defenses and objections to which it is entitled.

## II. FACTUAL ALLEGATIONS

### A. Plaintiff's allegations against the Braun Defendants concern their factory's alleged emission of a toxic chemical near Decedent's home.

4.      Plaintiff asserts several claims concerning Decedent's alleged exposure to emissions from the Braun Defendants' factory located near his home.  *See* Ex. A ¶¶ 48-115.

5.     Plaintiff alleges that throughout the relevant period, the Braun Defendants owned and operated a manufacturing "plant located at 901 Marcon Boulevard, Allentown, Pennsylvania 18109." *Id.* ¶ 10.  At the plant, Plaintiff alleges the Braun Defendants used ethylene oxide ("EtO") to "sterilize medical devices, medical instruments, and medical equipment." *Id.* ¶ 11.

6.     According to the Complaint, EtO is considered a known human carcinogen by the U.S. Department of Health and Human Services and the U.S. Environmental Protection Agency ("EPA"), and "[h]uman exposure to EtO through inhalation significantly increases the risk of developing various forms of cancer, including leukemia." *Id.* ¶¶ 55-57.

7.     Plaintiff alleges that, "[s]ince at least the late 1980s," the Braun Defendants have "knowingly emitted EtO into the air surrounding [their] Plant." *Id.* ¶ 71.  Plaintiff further alleges that the Braun Defendants' plant "emit[s] such high amounts of EtO at such a high frequency that citizens who come within certain areas surrounding [the] plant face a risk of developing cancer that is at least 200 times higher tha[n] the average Pennsylvania citizen's risk of developing cancer." *Id.* ¶ 72.

8.     Plaintiff alleges that, based on EPA data, the Braun Defendants' plant was "recently found to be the 12th largest emitter and polluter of EtO in the entire country." *Id.* ¶ 75.

9.     According to the Complaint, "[a]fter the EtO from [the Braun] Defendants' Plant is emitted, it remains in the air for numerous months" and "moves throughout the [surrounding] communities and neighborhoods," including where Decedent "lived for many years and the community where he routinely worked and/or resided at all material times." *Id.* ¶ 73.

10.     Plaintiff alleges that "[f]or multiple years during a time period when the [Braun] Defendants were emitting dangerous and excessive levels of EtO," Decedent "lived in an area in close proximity to the [Braun] Defendants' Plant where he has been exposed to and inhaled

excessive and dangerous amounts of EtO emissions." *Id.* ¶ 101.  Plaintiff claims that Decedent "has consistently inhaled air polluted with the EtO that [the Braun] Defendants emitted from [their] Plant in and around his home and place(s) of work for well over a decade." *Id.* ¶ 111.

11.     Plaintiff alleges that in May 2021, Decedent began suffering "debilitating pain and fatigue, the cause of which he could not determine." *Id.* ¶ 36.  Plaintiff alleges that "[b]y July, 2021, [Decedent] was completely disabled," and "in or around late December, 2021," he was diagnosed with "acute myeloid leukemia" ("AML"), a "cancer that originates in the human bone marrow and spreads quickly to the blood." *Id.* ¶¶ 37-41.

12.     According to the Complaint, "[a]s a direct factual and proximate cause and result of [Decedent's] repeated exposure and inhalation of excessive amounts of EtO emissions from the [Braun] Defendants' Plant over a period of multiple years, [Decedent] developed the AML that caused his death" in October 2022. *Id.* ¶¶ 40, 115.

13.     Plaintiff asserts claims against the Braun Defendants for negligence, strict liability, public and private nuisance, and for violation of Decedent's right to clean air pursuant to Article I, Section 27 of the Pennsylvania Constitution.  Plaintiff also asserts "Survival Action" and wrongful death claims against the Braun Defendants.

> **B.     Plaintiff's unrelated allegations against the Philips Defendants concern Philips RS's recall of certain CPAP, BiPAP, and ventilator devices.**

14.     Plaintiff's Complaint also asserts claims predicated on entirely separate and distinct allegations concerning Philips RS's recall of certain medical devices. *Id.* ¶¶ 116-187.

15.     Plaintiff alleges that the Philips Defendants manufacture, market, and sell medical devices, including ventilators and "Continuous Positive Airway Pressure (CPAP) and Bilevel Positive Airway Pressure (BiPAP) devices for patients with sleep apnea." *Id.* ¶ 117.

16.     Plaintiff alleges that on June 14, 2021, the Philips RS "issued a recall notification for many of [its] CPAP, BiPAP, and mechanical ventilator devices" due to potential health risks related to the alleged degradation of polyester-based polyurethane ("PE-PUR") foam used for "sound abatement" in the affected devices.  *Id.* ¶¶ 120-21, 127.

17.     Plaintiff alleges that the "foam may degrade under certain circumstances, influenced by factors including the use of unapproved cleaning methods, such as ozone[], and certain environmental conditions involving high humidity and temperature."  *Id.* ¶ 133

18.     According to the Complaint, "risks from exposure to chemicals released from the sound abatement foam via degradation and/or off-gassing" "could include headache, irritation, inflammation, respiratory issues, and possible toxic and carcinogenic effects."  *Id.* ¶¶ 122-23.

19.     Plaintiff alleges that in May 2017, Decedent "was prescribed the use of at least one of Philips' recalled devices, the DreamStation CPAP machine," which he used "on a daily basis for a number of years" to treat sleep apnea.  *Id.* ¶¶ 124-25.

20.     As noted above, Plaintiff alleged that inhalation of EtO emissions from the Braun Defendants' factory was the "direct factual and proximate cause" of Decedent's death.  *Id.* ¶ 115.

21.     Plaintiff, however, separately blames Decedent's injury, disease, and death on the CPAP device.  *Id.* ¶ 154.

22.     In addition to the claims Plaintiff asserts against the Braun Defendants, Plaintiff asserts a separate set of claims against the Philips Defendants for strict liability, negligence, and breach of express and implied warranties, as well as "Survival Action" and wrongful death claims.[1]

---

[1] As noted in Section V below, related class action and personal injury cases concerning Philips RS's recall have been consolidated into a multidistrict litigation that is currently pending before the Honorable Joy Flowers Conti in the District Court for the Western District of Pennsylvania.

### C. Plaintiff's claims against the Philips Defendants are disconnected from and wholly unrelated to the claims against the Braun Defendants.

23.     Plaintiff has improperly joined two distinct cases into a single action.

24.     The first is an environmental toxic tort action against the Braun Defendants for their operation of a plant that allegedly emits carcinogenic chemical fumes that Decedent and other members of the surrounding community inhaled for "well over a decade."  *See id.* ¶¶ 111-12.

25.     The second case is a products liability action against the Philips Defendants concerning Philips RS's voluntary product recall to address allegations that the sound abatement foam component in certain of its CPAP, BiPAP, and ventilator devices has the potential to break down and off-gas volatile organic chemicals ("VOCs"), and the potential health risks associated with exposure over time to degraded foam particulate and VOCs.  *Id.* ¶¶ 133-140.

26.     Plaintiff does not allege ***any*** connection between the Braun Defendants' plant, their use of EtO to sterilize medical devices and equipment, and their plant's release of harmful EtO emissions, on one hand, and the alleged defect that led to Philips RS's voluntary recall, on the other hand.  The former concerns a factory's alleged release of toxic, carcinogenic emissions into the environment, while the latter concerns potential hazards associated with an alleged defect in certain recalled CPAP, BiPAP, and ventilator devices.

27.     Nor does Plaintiff allege any connection between the Philips Defendants and the Braun Defendants.  Plaintiff does not allege that the Philips Defendants were in any way involved in the business conducted at the Braun Defendants' plant, or that the Braun Defendants were in any way involved in the manufacturing and/or design of Philips RS's recalled devices.

III.   **NOTICE OF REMOVAL IS TIMELY**

28.    Pursuant to 28 U.S.C. § 1446(b)(2)(B), "each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons" to file its notice of removal.

29.    Plaintiff purports to have served the Philips Defendants via hand delivery of the Complaint on or about May 31, 2023, at the earliest.  *See* **Exhibit C** (Service of Process on Philips Defendants).[2]

30.    This Notice is therefore timely because it is being filed within 30 days of service on the Philips Defendants.  *See* 28 U.S.C. § 1446(b)(1).

31.    Additionally, this Notice is timely because it is being filed within one year after commencement of the Underlying Action, pursuant to 28 U.S.C. § 1446(c)(1).

IV.   **GROUNDS FOR REMOVAL**

32.    Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."

33.    As discussed below, the Braun Defendants have been fraudulently misjoined because Plaintiff's environmental toxic tort claims against the Braun Defendants, arising from

---

[2] As explained in Section VI below, the Braun Defendants' consent to this removal is not necessary because they have been fraudulently misjoined.  *See Balazik v. Cnty. of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995) ("The unanimity rule may be disregarded where: (1) a non-joining defendant is an unknown or nominal party; or (2) where a defendant has been fraudulently joined."); *Cooke-Bates v. Bayer Corp.*, No. 3:10CV261, 2010 WL 3064304, at *3 (E.D. Va. Aug. 2, 2010) ("[E]ven if the defendant did not consent, the removing defendant alleged that the non-diverse defendant was fraudulently misjoined, which . . . has been recognized as an exception to the unanimity rule.").

their operation of a factory that emitted, over the course of decades, carcinogenic fumes, are distinct from and have no legitimate connection to Plaintiff's purported claims against the Philips Defendants arising out of an alleged defect in certain recalled CPAP devices.

34.     Because the Court "may disregard, for purposes of jurisdiction, the citizenship of" the Braun Defendants, "the fraudulently [mis]joined parties," there is complete diversity among the parties.  *See In re Fosamax (Alendronate Sodium) Prod. Liab. Litig. (No. II)*, No. CIV.A. 11-3045, 2012 WL 1118780, at *6 (D.N.J. Apr. 3, 2012), *aff'd*, 751 F.3d 150 (3d Cir. 2014); *see also Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (holding that where "resident defendants ha[d] no real connection with the controversy involving" non-resident defendants, "attempt to join these parties [wa]s so egregious as to constitute fraudulent joinder"), *abrogated on other grounds by Cohen v. Off. Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

35.     And because the amount in controversy in this action plainly exceeds $75,000, this court has original subject-matter jurisdiction under 28 U.S.C. § 1332 and Philips RS may remove this action to federal court pursuant to 28 U.S.C. § 1441(b).

### A.     There is complete diversity among the parties.

36.     Diversity jurisdiction "require[s] complete diversity of citizenship"—*i.e.*, "the citizenship of each plaintiff" must be "diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *see also Morrison v. Spirit Airlines, Inc.*, No. CV 19-18743 (SRC), 2019 WL 6907481, at *1 (D.N.J. Dec. 17, 2019) ("It is well-established that for a federal court to have subject matter jurisdiction under Section 1332(a)(1), there must be complete diversity, meaning all plaintiffs must be citizens of a different state or states than all defendants."); *Ramirez v. Gonzalez*, No. 5:19-CV-5519, 2020 WL 3447772, at *2 (E.D. Pa. June 24, 2020) ("Diversity of citizenship requires that all parties involved must be citizens of different states at

the time that the case is initially filed.").

### 1. Plaintiff is a citizen of Pennsylvania.

37.     For diversity purposes, "[i]f a party is deceased, the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent."  *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) (quotations omitted); *see also* 28 U.S.C. § 1332(c)(2) ("the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent"); *Golden v. Golden*, 382 F.3d 348, 352 n.1 (3d Cir. 2004) ("In diversity actions involving estates, the courts look to the citizenship of the decedent to determine jurisdiction.").

38.     And although residence alone is not the equivalent of citizenship, the place of residence is *prima facie* evidence of domicile there.  *See Homsi v. Home Depot USA, Inc*., No. 3:20-CV-01724, 2021 WL 2447241, at *2 (M.D. Pa. May 26, 2021) ("[R]esidence is prima facie evidence of citizenship") (quoting *Broderick v. Dellasandro*, 859 F. Supp. 176, 177 (E.D. Pa. 1994)), *report and recommendation adopted*, 2021 WL 2444214 (M.D. Pa. June 15, 2021).

39.     Plaintiff Sherri Papsun, administratrix of the estate of her late husband, states that Decedent "lived and died" in Lehigh County, Pennsylvania.  Ex. A ¶ 35.  Moreover, Plaintiff brought the Underlying Action in Pennsylvania state court, is represented by counsel located in Pennsylvania, and alleges that a substantial part of the events giving rise to its claims occurred in Lehigh County, Pennsylvania.  *Id.* ¶¶ 35, 73.

40.     Therefore, Plaintiff is a citizen of Pennsylvania.

### 2. Defendant Philips RS is a citizen of Delaware and Massachusetts.

41.     For purposes of diversity jurisdiction, the citizenship of a limited liability company, like Philips RS, is determined by the citizenship of its members.  *See Zambelli Fireworks Mfg. Co.*

*v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010) ("[T]he citizenship of an LLC is determined by the citizenship of each of its members.").

42.     Philips RS is wholly owned by a single member, Philips RS North America Holding Corporation, which is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Cambridge, MA 02141.  *See* **Exhibit D** (Philips RS North America Holding Corporation Corporate Records & Business Registrations).

43.     For diversity purposes, a corporation is a citizen of both the state where it is incorporated and the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).

44.     Accordingly, because Philips RS North America Holding Corporation is a citizen of both Delaware and Massachusetts, Philips RS also is a citizen of both Delaware and Massachusetts.  Therefore, Philips RS is diverse from Plaintiff.

### 3.     *Defendants Philips NA and Philips USA are citizens of Delaware and Massachusetts.*

45.     Philips NA is a limited liability company that is wholly owned by a single member, Philips USA, which is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Cambridge, MA 02141.  *See* **Exhibit E** (Philips North America LLC Corporate Records & Business Registrations); **Exhibit F** (Philips Holding USA Inc. Corporate Records & Business Registrations).

46.     As noted above, a corporation is a citizen of the state where it is incorporated and the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).  Accordingly, Philips USA is a citizen of both Delaware and Massachusetts, and Philips NA also is a citizen of both Delaware and Massachusetts.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("[T]he citizenship of an LLC is determined by the citizenship of its members.")

(quotations omitted).  Therefore, Philips NA and Philips USA are diverse from Plaintiff.

> **4.    *The Braun Defendants are fraudulently misjoined and the Court should ignore their citizenship.***

> i.    <u>The Fraudulent Misjoinder Doctrine</u>

47.    "Fraudulent misjoinder, otherwise known as 'procedural misjoinder[,]' refers to a situation where a plaintiff attempts to frustrate a defendant's right to remove by joining a non-diverse party in violation of the applicable joinder rule." *Breitner v. Merck & Co.*, No. 318CV15982PGSTJB, 2019 WL 316026, at *2 (D.N.J. Jan. 24, 2019) (internal quotations omitted).  "Whereas fraudulent ***joinder*** focuses on the substantive deficiencies of a claim against a joined party, fraudulent ***misjoinder*** focuses on procedural deficiencies of a party's joinder." *In re Fosamax*, 2012 WL 1118780, at *2 (emphases added).  If the Court "determine[s] that Plaintiff['s] claims are fraudulently misjoined, the Court may disregard, for purposes of jurisdiction, the citizenship of fraudulently joined parties." *Id.* at *6.

48.    The "fraudulent misjoinder analysis requires two steps." *In re Fosamax*, 2012 WL 1118780, at *3.  "First, a court must find that claims have been misjoined." *Id.*  While there is disagreement among courts as to whether federal or state permissive joinder rules govern, this disagreement is not an issue here because Pennsylvania's permissive joinder rule is substantively identical to Fed. R. Civ. P. 20(a).  *See Pennsylvania Emps. Benefit Tr. Fund v. Eli Lilly & Co.*, No. CIV.A. 07-2057, 2007 WL 2916195, at *10 n.14 (E.D. Pa. Oct. 5, 2007) ("Pennsylvania's permissive joinder rule . . . was adapted from [a] federal corollary rule"); *Johnson Controls, Inc. v. Irving Rubber & Metal Co.*, 920 F. Supp. 612, 615 (M.D. Pa. 1996) ("Pennsylvania's joinder rule" is "similar to the federal rule").  Joinder is permitted "if the plaintiff's claims 'aris[e] out of the same transaction, occurrence, or series of transactions or occurrences' and there is a 'question

of law or fact common to all defendants [that] will arise in the action.'"  *Zuzel v. SEPTA*, No. CV 19-268, 2019 WL 1584598, at *2 (E.D. Pa. Apr. 11, 2019).  "[B]oth elements of Rule 20 ***must*** be met for a plaintiff to proceed against multiple defendants in a single action."  *Id*. (emphasis added).[3]

49.    "Second, if claims have been improperly joined, the court must determine whether the joinder was egregious."  *In re Fosamax*, 2012 WL 1118780, at *3.  "Joinder is considered egregious when there is 'no real connection' between [the] underlying claims," including because the evidence required to prove each set of claims is legally and factually distinct.  *See Breitner*, 2019 WL 316026, at *2.

50.    Where, as here, "toxic tort litigation" has been "consolidated pursuant to the MDL statute," application of the fraudulent misjoinder doctrine is particularly "clea[r]" and "serves the purposes of that law."  *In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-CV-2049 JG VVP, 2013 WL 3729570, at *8 (E.D.N.Y. May 17, 2013).  The "MDL procedure is designed to direct judicial resources and the parties' pretrial litigation efforts more efficiently to benefit both plaintiffs and defendants.  If plaintiffs can escape the MDL by joining multiple, unconnected and non-diverse parties in a state court of their choice, they defeat the purposes of the MDL and deny defendants their right to removal."  *Id.*; *see also In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. CIV 07-1487 DWF/AJB, 2007 WL 2572048, at *2 (D. Minn. Aug. 30, 2007) (holding that, "because of the nature, stage, and progression of this MDL," "the rights of the parties and interest of justice is best served by severance" of unrelated claims against non-diverse

---

[3] *See also Brenneis v. Marley*, 5 Pa. D. & C.2d 20, 28 (Pa. Com. Pl. 1956) (holding that Pennsylvania's permissive joinder rule requires that "claims arise 'out of the same transaction, occurrence, or series of transactions or occurrences' and there is a 'common question of law or fact affecting the rights to relief of all such persons,'" and noting "[b]oth of these conditions must be satisfied").

defendants pursuant to the fraudulent misjoinder doctrine).

ii.   Cases Applying the Doctrine

51.    Courts in the Third Circuit have found fraudulent misjoinder in analogous cases involving improperly joined plaintiffs asserting unrelated and disconnected claims. *See In re Fosamax*, 2012 WL 1118780, at *4 (finding plaintiffs' claims fraudulently misjoined where "the factual, temporal, and geographic diversity among Plaintiffs' claims wholly disregard[ed] the purposes of permissive joinder" and did "not promote trial convenience" or "expedite the final determination of disputes"); *Breitner*, 2019 WL 316026, at *4 ("determine[ing] that Plaintiffs' claims have been misjoined" and that such joinder was "egregious" because there was "no real connection between [the] underlying claims"); *In re Diet Drugs*, No. 1203, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1999) (finding plaintiffs were "clearly misjoined"); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 294 F. Supp. 2d 667, 678 (E.D. Pa. 2003) (finding that "the New Jersey plaintiffs are egregiously and fraudulently misjoined" because "[d]ifferent evidence surely will be required to litigate the claims of each of the New Jersey plaintiffs, such that judicial economy would not be served by trying them together").

52.    The same fraudulent misjoinder analysis applies where defendants—not plaintiffs—have been fraudulently misjoined. *See In re Diet Drugs*, 1999 WL 554584, at *3 n.6 ("The court notes that although the facts of *Tapscott* concerned the misjoinder of certain defendants, the reasoning of that case has been applied to find that the egregious misjoinder of plaintiffs may also constitute fraudulent joinder.") (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Off. Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000) (affirming application of misjoinder doctrine where "resident defendants ha[d] no real connection with" plaintiffs' claims against other defendants, and holding

that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action")).

53.     Courts frequently apply fraudulent misjoinder where, as here, two sets of defendants engage in distinct courses of action that allegedly contribute to one harm. *See, e.g.*, *Stone v. Zimmer, Inc.*, No. 09-80252-CIV), 2009 WL 1809990, at *4 (S.D. Fla. June 25, 2009) (finding joinder of "malpractice claim against" clinic and physician who failed to "properly diagnose the [hip] implant fracture" with "the product liability claim" against hip implant manufacturer was "inappropriate," and crediting argument that "failing to make a timely accurate diagnosis of the source of [plaintiff's] persistent pain is separate and distinct injury from the damage caused by the implant failure itself"); *Smith v. Hendricks*, 140 F. Supp. 3d 66, 75 (D.D.C. 2015) (finding medical providers who implanted defective surgical mesh fraudulently misjoined where the "factual basis for the claims against [the manufacturer of the mesh] pertains to the research, development, production, and marketing of the [mesh]; the factual basis for the claims against the [medical providers] pertains to Plaintiff's treatment by and interaction with her healthcare providers," and thus the two sets of claims did "not arise out of the same transaction, occurrence, or series of transactions or occurrences").[4]

---

[4] *See also In re Stryker Rejuvenate & ABG II Hip Implant Prod. Liab. Litig.*, No. CIV. 13-1811 DWF/FLN, 2013 WL 6511855, at *4 (D. Minn. Dec. 12, 2013) (finding "joinder of any malpractice, negligence, or misrepresentation claim against the Hospital Defendants," who failed to diagnose and treat pain caused by a defective hip implant, "with the other product liability claims (that are properly asserted against the [implant] manufacturer)" "inappropriate because the claims do not both involve common questions of law or fact and assert joint, several, or alternative liability 'arising out of the same transaction, occurrence, or series of transactions or occurrences'"); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008) (applying fraudulent misjoinder where "Plaintiffs' claims based on strict products liability against [defendant manufacturers of a recalled medical patch] are separate from Plaintiffs' claims of medical malpractice against the [medical professional defendants who] implant[ed] a previously recalled patch in Plaintiff"); *In re Rezulin*

54.     Here, the connection between Plaintiff's claims against the Braun Defendants and the Philips Defendants is even more attenuated because the medical malpractice and products liability claims at issue in the above-cited cases generally involved defendants manufacturing, prescribing, and implanting the same product—*i.e.*, a medical device.   In the instant action, however, there are ***no*** allegations that the Braun Defendants had anything to do with the Philips Defendants or Philips RS's recalled devices, or that the Philips Defendants had anything to do with the carcinogenic fumes the Braun Defendants' factory allegedly emitted.

55.     While the Third Circuit has not expressly taken a position on fraudulent misjoinder, it affirmed application of the fraudulent misjoinder doctrine as the basis for retaining jurisdiction in *In re Fosamax*, 2012 WL 1118780.  The Third Circuit noted that "[t]he District Court exercised diversity jurisdiction under 28 U.S.C. § 1332 after it 'disregard[ed], for purposes of jurisdiction, the citizenship of fraudulently joined' parties" on fraudulent misjoinder grounds, and found "no reason to disturb" that holding.  *See In re Fosamax (Alendronate Sodium) Prod. Liab. Litig. (No. II)*, 751 F.3d 150, 156 n.10 (3d Cir. 2014).   Thus, by implication, the Third Circuit has approved of the doctrine's usage.  *See Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Philadelphia*, 657 F.2d 29, 36 (3d Cir. 1981) ("A federal court is bound to consider its own jurisdiction preliminary to consideration of the merits."); *Emps. Ins. of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42, 45 (3d Cir. 1990) ("[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.'").

iii.     Application of the Doctrine in the Instant Action

56.     The circumstances in the instant action clearly warrant application of the fraudulent

---

*Prod. Liab. Litig.*, MDL No. 1342, 2003 WL 21276425, at *1-2 (S.D.N.Y. June 2, 2003) (finding non-diverse physician improperly joined with claims against drug manufacturer).

misjoinder doctrine.

57.     ***First***, Plaintiff's joinder of the Braun Defendants plainly is improper under state and federal permissive joinder rules because Plaintiff's environmental tort claims against the Braun Defendants and product liability claims against the Philips Defendants do not involve common "question[s] of law or fact" and do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences."  Fed. R. Civ. P. 20(2)(A); *see also* Pa. R. C. P. 2229(b).

58.     As discussed above, courts routinely find fraudulent misjoinder even where plaintiffs attempt to join medical malpractice claims against a physician concerning an allegedly defective product with product liability claims against the manufacturer of that same product.  *See supra* ¶ 53 (citing, *e.g.*, *Stone*, 2009 WL 1809990, at *4 (finding joinder of medical malpractice claim and product liability claim concerning same product "inappropriate"); *In re Stryker*, 2013 WL 6511855, at *4 (same); *In re Rezulin*, 2003 WL 21276425, at *1-2 (finding non-diverse physician improperly joined with claims against drug manufacturer)).

59.     The circumstances here—where Plaintiff seeks to assert environmental claims against the Braun Defendants and unrelated product liability claims against the Philips Defendants based on Decedent's unrelated use of a Philips device—are far more attenuated, as no common product unites these two distinct sets of defendants.

60.     Moreover, Plaintiff's concurrent blame of Decedent's injuries and cancer on the environmental emissions attributed to the Braun Defendants ***and*** the alleged exposure to defective foam from his use of a Philips device does not change the result.   The mere fact that two entirely distinct courses of action allegedly contributed to the same ultimate injury does not establish that claims concerning those courses of action arise out of the same transaction or occurrence.  *See, e.g.*, *Kalker v. Moyer*, 921 A.2d 21, 22 (Pa. Super. 2007) (holding that car accidents that occurred

in "different counties seven months apart" and involved different defendants were "not part of a series of transactions or occurrences," even "where plaintiff's injuries [we]re to the same part of the body" and plaintiff's "treating surgeon was unable to determine which accident caused what amount of damage to her arm"); *Oda v. United States*, No. CV11-04514-PSG, 2012 WL 692409, at *2 (N.D. Cal. Mar. 2, 2012) (finding joinder improper where "two accidents allegedly contribute[d] to [plaintiff's] current injuries," but "the facts surrounding [one] accident" were "wholly distinct" from the facts surrounding the other, and a "finding of liability in one instance will have no bearing whatsoever on a finding of liability in the other, as the evidence required in determining liability in either case will be completely separate"); *Lyles v. Schaible*, No. 121CV00847RDAIDD, 2022 WL 981935, at *4 (E.D. Va. Mar. 30, 2022) (finding that car "crash on August 14, 2020, although involving injuries that Plaintiff then allegedly exacerbated in the August 21, 2020 crash, does not bear a sufficiently reasonable relationship to the August 21, 2020 crash in order to classify the two crashes as part of the same transaction or occurrence" where the "facts and circumstances in the first crash are substantially different from those in the second").

61.     The alleged factual bases for Plaintiff's claims against the Braun Defendants concern those entities' operation of a plant that emitted, for decades, toxic carcinogenic fumes—allegedly known to cause the particular type of cancer that Decedent developed—into the air of the surrounding community, including the area where Decedent lived and worked.

62.     By contrast, the alleged factual bases for Plaintiff's claims against the Philips Defendants concern the design choice to equip certain Philips RS medical devices with a foam component that may break down and off-gas chemicals under certain conditions, and the way in which the voluntary recall of those devices has been carried out.

63.     Indeed, Plaintiff's products liability and environmental tort claims focus on entirely

different legal and factual issues.  The products liability claims will focus on the alleged manufacture, design, labeling, and sale of the Philips RS CPAP device that Decedent allegedly used.  The Braun Defendants are not alleged to have participated in any way in the manufacture, design, labeling, or sale of any such recalled Philips RS device.[5]

64.     Plaintiff's environmental tort claims, however, will focus on whether the Braun Defendants breached their duty of care to Decedent when they allegedly knowingly emitted dangerously high levels of carcinogenic fumes from their factory near Decedent's home for more than a decade.  These claims against the Braun Defendants do not arise out of the same transaction or occurrence as the product liability claims against the Philips Defendants concerning the allegedly defective foam.

65.     **Second**, for the same reasons, Plaintiff's joinder of the Braun Defendants is egregious because "there is 'no real connection'" between Plaintiff's claims against the Braun Defendants and its claims against the Philips Defendants.  *See Breitner*, 2019 WL 316026, at *2.

66.     In fact, these are entirely different cases.  The evidence required to prove Plaintiff's environmental tort claims against the Braun Defendants is legally and factually distinct from the

---

[5] Alternatively, the Braun Defendants have been fraudulently joined to the extent that Plaintiff asserts claims against those defendants concerning Philips RS's voluntary recall of certain CPAP, BiPAP, and mechanical ventilator devices.  Plaintiff does not allege that the Braun Defendants played any role in the design, manufacture, distribution, or sale of the recalled devices, or was in any way involved in the alleged decision to equip the devices with allegedly defective sound abatement foam.  *See, e.g.*, *Sussman v. Cap. One, N.A.*, No. 14-01945 FLW, 2014 WL 5437079, at *6 (D.N.J. Oct. 24, 2014) (applying fraudulent joinder where there were "simply no allegations to substantiate a claim against [defendant] such that joinder of the defendant would be appropriate"); *Hannah v. Johnson & Johnson Inc.*, No. CV 18-10319, 2020 WL 3497010, at *14 (D.N.J. June 29, 2020) (finding that "the complete lack of allegations, let alone specific ones, against Schnuck Markets demonstrates that it was fraudulently joined," and noting that "there is no better admission of fraudulent joinder than the failure of a plaintiff to set forth any specific factual allegations against a defendant) (internal quotations omitted).

evidence required to prove Plaintiff's products liability claims against the Philips Defendants. Plaintiff's environmental tort claims against the Braun Defendants will require evidence regarding, among other topics, the extent to which the Braun Defendants' plant emitted carcinogenic fumes, whether inhalation of such fumes in the surrounding environment could have caused Decedent's AML, whether such inhalation did, in fact, cause Decedent's AML, and whether the Braun Defendants took reasonable precautions to limit their factory's emission of EtO.

67.     Plaintiff's claims against the Philips Defendants, on the other hand, are based on the alleged decision to use PE-PUR foam in the recalled devices, and will require evidence concerning the development, manufacture, and testing of such devices as well as the Philips Defendants' knowledge, warnings, and disclosures regarding risks associated with the foam and the potential for alleged harm as the result of degradation and/or off-gassing.

68.     Thus, any liability that may be found as to the Braun Defendants would not be a basis for liability as to Philips RS (or any other Philips Defendant); nor would any liability that may be found as any of the Philips Defendants be a basis for liability as to the Braun Defendants.

69.     Given the clear fraudulent misjoinder, the citizenship of the Braun Defendants should be disregarded in determining whether complete diversity exists.

### 5.     *The Court should disregard the John Doe Defendant's citizenship.*

70.     "The citizenship of parties with fictitious names such as 'John Doe' or ABC Corporation are disregarded for purposes of determining diversity." *Mucci v. Decision One Mortg.*, No. CIV.A. 12-1840 JLL, 2012 WL 3757035, at *3 (D.N.J. Aug. 9, 2012), *report and recommendation adopted*, No. CIV.A. 12-1840 JLL, 2012 WL 3757290 (D.N.J. Aug. 28, 2012); *see also Brent v. First Student, Inc.*, No. CV 19-6023, 2020 WL 2545328, at *2 (E.D. Pa. May 20, 2020) ("Because the John Doe defendant has only been named as a fictitious party, the Court

cannot consider his citizenship."); 28 U.S.C.A. § 1441 (for purposes of diversity jurisdiction, "the citizenship of defendants sued under fictitious names shall be disregarded").

71.     Accordingly, the Court should disregard the citizenship of the John Doe Defendant in determining whether complete diversity exists.

### 6.     There is complete diversity among the parties.

72.     Thus, based on the foregoing, there is complete diversity among the properly joined, non-fictitious parties.

| Plaintiff | Defendants |
|---|---|
| Sherri Papsun, Administratrix of the Estate of Darrell G. Papsun (PA) | Philips RS (DE/MA) <br> Philips NA (DE/MA) <br> Philips USA (DE/MA) |

### B.     The amount in controversy requirement is satisfied.

73.     There plainly is more than $75,000 in controversy.  *See* 28 U.S.C. § 1332(a).

74.     Where, as, here, the plaintiff "has not pled a specific sum of damages in the complaint, the notice of removal may assert the amount in controversy." *Nat'l Salvage & Serv. Corp. v. Pristine Res., Inc.*, No. 3:21-CV-138, 2022 WL 17362016, at *3 (W.D. Pa. Dec. 1, 2022). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

75.     "A district court's determination as to the amount in controversy must be based on the plaintiff's complaint at the time the petition for removal was filed." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002) (internal quotation marks and citation omitted). "The court must measure the amount 'not by the low end of an open-ended claim but by a reasonable reading

of the value of the rights being litigated.'" *Alston v. Wal-Mart Stores E., L.P.*, No. CIV.A. 12-3491, 2012 WL 4321973, at *3 (E.D. Pa. Sept. 20, 2012) (quoting *Howard v. Wal–Mart Supercenter*, No. CIV.A 09-4530, 2009 WL 4362856, at *2 (E.D. Pa. Nov. 30, 2009)).

76.     Plaintiff alleges that, "[b]eginning in May, 2017," Decedent "was prescribed the use of at least one of Philips' recalled devices, the DreamStation CPAP machine," and that he "used the Device for multiple years before he developed the AML that caused his death, and all the related harms and damages alleged" in the Complaint. Ex. A ¶ 124. Plaintiff further alleges that, as a result of Defendants' conduct, Decedent "suffered debilitating pain and fatigue," which "progressed to the point that he became disabled from his job." *Id.* ¶ 36. According to the Complaint, Decedent's alleged illness, AML, is a "progressive, painful and frequently terminal illness with multiple ill effects, including debilitating weakness, fatigue and disability, all of which Darrell G. Papsun suffered during the course of his illness." *Id.* ¶ 41. Plaintiff further alleges that Decedent "underwent a long course of prescribed medical treatment" to treat the AML, which "itself was painful and replete with side effects, at great financial expense." *Id.* ¶ 43.

77.     Plaintiff seeks from the Philips Defendants compensatory and punitive damages, damages for Decedent's pain, suffering, severe emotional distress, dread and apprehension of impending death, loss of life's pleasures, loss of earnings, and medical expenses, and all other pecuniary losses resulting from Decedent's death, including funeral expenses, and loss of his consortium, companionship, and services. *E.g.*, *id.* ¶¶ 269, 277, 312.

78.     The Philips Defendants deny any liability to Plaintiff and/or Decedent; however, the nature of the case, the nature and extent of the alleged harm suffered by Decedent, and the nature of the damages requested put far more than $75,000 in controversy.

79.     In *Ciglar v. Ruby Tuesday, Inc.*, for example, the plaintiff alleged he suffered "'serious and permanently disabling injuries,' requiring repeated doctors' visits, multiple MRIs, and six months of physical therapy consisting of 'spinal manipulation, manual traction, deep tissue massage, hydrotherapy, and exercise therapy'" as well as "agonizing aches and severe mental anguish that may require future treatment and may preclude him from resuming his regular occupation." No. CIV. 09-239, 2009 WL 737367, at *5 (E.D. Pa. Mar. 19, 2009) (citations omitted). The court concluded that "[t]hese allegations, if proven, could certainly result in a damage award greater than $75,000." *Id.*

80.     Similarly, in *Marie v. Sears Auto Repair Ctr.*, plaintiff alleged damages in excess of $50,000.00 resulting from "substantial medical expenses," "loss of enjoyment of life [and] life expectancy," and past and future mental anguish. No. 10-CV-6535, 2011 WL 198465, at *2 (E.D. Pa. Jan. 20, 2011). The court concluded based on the categories and nature of harm alleged that "[a] jury could reasonably award more than $75,000.00 in damages." *Id.* at *3.

81.     Finally, in *Griffin v. Home Depot U.S.A., Inc.*, plaintiffs alleged that as a result of serious injuries, they required medical attention, underwent multiple surgeries, and incurred considerable medical expenses. No. CV 22-739, 2022 WL 2116646, at *3 (W.D. Pa. May 20, 2022). Plaintiffs also alleged a loss of earnings, severe physical pain, mental anguish, and loss of enjoyment of life's pleasures, as well as loss of services, assistance, and companionship. *Id.* The court found these allegations sufficient to determine based on the face of the complaint that the amount in controversy requirement had been satisfied. *Id.*[6]

---

[6] *See also Bryant v. Ferguson Enters., Inc.*, No. 02-1677, 2002 WL 1067459, at *1 (E.D. Pa. May 29, 2002) (holding "reasonable jury clearly could award more than $75,000 in damages if plaintiffs' averments are substantiated" given allegations of "orthopedic, neurological, and internal injuries" as well as "post-concussion syndrome"); *Napolitano v. Doherty*, No. 3:10CV806, 2010

82.     The allegations in Plaintiff's Complaint directed at the Philips Defendants are similar to and/or exceed the nature of the harm alleged in each of these cases where the amount in controversy was determined to be satisfied.  Therefore, it is clear that the amount in controversy requirement is satisfied.

83.     Indeed, in "the context of a personal injury suit between diverse parties," "courts have held that allegations of severe injuries along with pain and suffering will alert [the] defendant that an amount in excess of [the jurisdictional amount] is at issue." *See Carroll v. United Air Lines, Inc.*, 7 F. Supp. 2d 516, 521 (D.N.J. 1998) (collecting cases); *see also Lewis v. Asbestos Corp.*, No. CIV.A. 10-650 FLW, 2012 WL 3240941, at *3 (D.N.J. Aug. 7, 2012) ("Given that a human being's life and death is at issue, the Court cannot unequivocally state that Plaintiff has proved to a legal certainty, that the amount in controversy ***could not exceed*** the statutory threshold.") (quotations omitted) (italics in original).

84.     Accordingly, given the nature and extent of the injuries and damages alleged, it is facially apparent that the amount in controversy requirement is satisfied.

## V.    <u>VENUE</u>

85.     This lawsuit may be removed to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(a).

86.     The United States District Court for the Eastern District of Pennsylvania is the

---

WL 2195802, at *1 (M.D. Pa. May 27, 2010) (finding amount in controversy satisfied where plaintiff alleged he suffered serious and permanent injuries, spent large sums for medical expenses, suffered great pain and suffering, and lost earning power); *Bastemeyer v. Dollar Gen. Corp.*, No. 3:05CV596, 2005 WL 8167395, at *2 (M.D. Pa. June 8, 2005) (holding that "a reasonable jury in this case easily could value the sum of Plaintiffs' damages - major surgery and potentially permanent injuries and medical costs, already stated by the Plaintiffs as exceeding $50,000 - at more than $75,000").

federal judicial district encompassing the Court of Common Pleas of Lehigh County, Pennsylvania, Civil Division, where this suit was originally filed.  28 U.S.C. § 118.

87.     On October 8, 2021, the United States Judicial Panel on Multidistrict Litigation issued a Transfer Order, consolidating related class action cases and individual personal injury cases like this matter into a multidistrict litigation (MDL 3014) and ordering their transfer to the Western District of Pennsylvania, before the Honorable Joy Flowers Conti for coordinated or consolidated pretrial proceedings.  *See* **Exhibit G** (Transfer Order).

88.     It is anticipated that this case will be transferred to MDL 3014 following removal.[7]

## VI.   CONSENT

89.     "When a civil action is removed solely under section 1441(a), all defendants who have been ***properly joined and served*** must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A) (emphasis added).

90.     Because the Braun Defendants are fraudulently misjoined, their consent to removal is not necessary.  *See, e.g.*, *Isaac v. Mitchell*, No. CIV.A. 08-CV-2505, 2008 WL 2890947, at *1 (E.D. Pa. July 25, 2008) (holding that "parties fraudulently joined need not consent" to removal); *Balazik v. Cnty. of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995) ("The unanimity rule may be disregarded where: (1) a non-joining defendant is an unknown or nominal party; or (2) where a defendant has been fraudulently joined.").

91.     Philips NA and Philips USA both consent to removal of the Underlying Action to

---

[7] Defendants removing on fraudulent misjoinder grounds will occasionally file, concurrently with the notice of removal, a motion to sever the misjoined defendants from the action.  But because this case likely will soon be transferred to the MDL and because, as of the date of this Notice, remand motion practice is stayed in the MDL (*see* MDL ECF No. 4, Pretrial Order #1, ¶ 11; MDL ECF No. 1901, Order at 1), Philips RS is not filing such a motion but reserves its right to do so in the future.

federal court.  *See* **Exhibit H** (Declaration of William Monahan in Support of Notice of Removal).

## VII.    PROCEDURE

92.     Written notice of the filing of the Notice of Removal will promptly be served on all

other parties to this action and a copy will be promptly filed with the Court of Common Pleas of

Lehigh County, Pennsylvania, Civil Division, as required by 28 U.S.C. § 1446(d).

93.     Included with this Notice is the filing fee of $350 required by 28 U.S.C. § 1914.

## VIII.    CONCLUSION

Philips RS respectfully removes this action from the Court of Common Pleas of Lehigh

County, Pennsylvania, Civil Division, to the United States District Court for the Eastern District

of Pennsylvania.

Dated: June 20, 2023                     Respectfully Submitted,

                                         */s/ John P. Lavelle, Jr.*
Michael H. Steinberg                     John P. Lavelle, Jr.
SULLIVAN & CROMWELL LLP                   MORGAN, LEWIS & BOCKIUS LLP
1888 Century Park East                   1701 Market Street
Los Angeles, CA  90067-1725              Philadelphia, PA  19103-2921
Telephone:    +1.310.712.6670            Telephone:    +1.215.963.5000
Facsimile:    +1.310.712.8800            Facsimile:    +1.215.963.5001
steinbergm@sullcrom.com                  john.lavelle@morganlewis.com

William B. Monahan                       *Counsel for Defendant Philips RS North America*
SULLIVAN & CROMWELL LLP                   *LLC*
125 Broad Street
New York, NY  10004-2498
Telephone:    +1.212.558.7375
Facsimile:    +1.212.558.3588
monahanw@sullcrom.com

*Of Counsel for Defendants Philips North*
*America LLC and Philips Holding USA, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 20, 2023, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system which will send notification of such filing to:

Gerald J. Williams
WILLIAMS CEDAR, LLC
One South Broad Street, Suite 1510
Philadelphia, PA  19107
Telephone:     +1.215.557.0099
Facsimile:     +1.215.557.0673
gwilliams@williamscedar.com

*Attorney for Plaintiff*

/s/ John P. Lavelle, Jr.
John P. Lavelle, Jr.
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:     +1.215.963.5000
Facsimile:     +1.215.963.5001
john.lavelle@morganlewis.com

*Counsel for Defendant Philips RS North America LLC*